270.

*Rehearing denied Dec. 16, 1935.

 

Harold J. Moore, of New Orleans, for appellants.

Walter F. Marcus, Bert Flanders, Jr., and F. A. Kullman, all of New Orleans, for appellee.

McCALL, Judge ad hoc.

Morris Plan Bank, in liquidation, brings this suit against Fred J. Schmidt, Robert J. Maloney, and Louis C. Spear on their promissory note for $180, dated October 28, 1932, payable to the order of "Community Credit Corporation" in twenty monthly installments of $9 each, with 2½ per cent. interest per month on the unpaid balance. Though the note was dated October 28, 1932, and provided that the interest stated should be paid "from date on the unpaid balance until paid," the petition claimed interest only from October 28, 1933. Joint answer was filed on behalf of the three defendants, but in some way, not clear to us, the case was tried as to the defendant Schmidt before it was tried as to the other two defendants, with the result that judgment against Schmidt was rendered for the full amount claimed on November 21, 1934. As there is no appeal by Schmidt, it is not necessary to consider further the judgment against him.

The case was tried as to the other two defendants, Maloney and Spear, on February 27, 1935, and on the same day judgment was rendered against them as prayed for; and from that judgment they have appealed to this court.

■ The answer admits that the defendants signed the note, but it denies that they signed any note in favor of the Community Credit Corporation and pleads want of consideration. Since the note shows on its face that it was payable to the order of the Community Credit Corporation, and since defendants offered no evidence in support of their plea of want of consideration, these defenses are entitled to and will receive no further consideration.

The defendants deny that the plaintiff is the holder of the note before maturity for a valuable consideration. Apart from the fact that the only evidence in the record indicates the contrary, it would hardly seem that this defense has any value, since at most it would enable the defendants to plead against the present holder of the note any defense they might urge against the original lender, and no serious defense is suggested as against the original lender.

■ It is next alleged that the Community Credit Corporation "had no legal existence and was not authorized to do business of the character in question." The record indicates that the Community Credit Corporation was licensed under the Small Loan Act (No. 7 of the Extra Session of 1928), which license would necessarily carry with it a finding of corporate existence; and, besides, we do not consider that the men who deal with and receive money from a corporation should be permitted to question its existence.

■ It was suggested in argument that the license of the Community Credit Corporation fixed its place of business as 140 Carondelet street, while it was in fact operating in the Masonic Temple building on St. Charles street. While it is true that section 8 of the act forbids the licensee to function at any other place of business than that named in the license, we are not of the opinion that a violation of this provision of the law by the licensee voids the loan. The penalty for a violation of section 8 is criminal, as set forth in section 19. The concluding clause of section 13 of the act reads as follows:

"Interest, discount or charges in excess of those permitted by this Act shall not be charged, contracted for or received, and if any such shall be charged, contracted for or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

We are of the opinion that it is only for the particular violations of the statute set out in the language just quoted that the loan can be voided, and that since the violation of the act charged by defendants was not one of these, they cannot set it up in defense of the present civil action.

The defense that gives us most concern is found in the contention that the

plaintiff, by its charter provisions, could acquire no title to or ownership in the note. The Morris Plan Bank was not licensed under the Small Loan Act, whereas, as already stated, the Community Credit Corporation was so licensed. It appears that the Community Credit Corporation had space in the offices of the Morris Plan Bank in the Masonic Temple, and that the loan in question was made by the Community Credit Corporation and the money paid to defendants by it, but that on the same day the Community Credit Corporation transferred the note to the Morris Plan Bank. It further appears that all notes gotten by the Community Credit Corporation were promptly transferred to the Morris Plan Bank. This brings up the question of the right of the Morris Plan Bank, which was not licensed under the Small Loan Act, to sue on a note given under that act to a concern licensed under that act and by it transferred to the Morris Plan Bank pursuant to a regular practice to that effect in regard to such paper.

But for the provisions of the Small Loan Act, any note bearing interest of more than 8 per cent. per annum would be usurious. Section 1 of the Small Loan Act provides that:

"No person, co-partnership or corporation shall engage in the business of making loans of money, credit, goods or things in action in the amount or to the value of Three Hundred Dollars ($300.00) or less, and charge, contract for or receive a greater rate of interest than eight (8) per centum per annum therefor, except as authorized by this Act and without first obtaining a license from the State Bank Commissioner hereinafter called the licensing official."

It is obvious that the only prohibition in this section is against the making of the loan.

The next six sections of the act deal with what must be done to get a license and other similar mechanics.

Section 8, already referred to hereinabove, provides in part that "no person, co-partnership or corporation so licensed shall make any loan provided for by this Act, under any other name or at any other place of business than that named in the license," thus again stressing the proposition that the Legislature was interested solely in the making of the loan.

Sections 9, 10, 11, and 12 throw no light on the present difficulty. The opening sentence of section 13, reading, "Every person, co-partnership and corporation licensed hereunder may loan any sum of money not exceeding in amount the sum of Three Hundred Dollars ($300.00), and may charge, contract for and receive thereon interest at a rate not to exceed three and one-half (3½) per centum per month," again accentuates the thought that the making of the loan was the important thing.

■ Section 14 states in some detail certain things that the licensee must do, the first being to furnish a certain statement to the borrower; the second, to give to the borrower a receipt for all payments made on account; the third, to permit payments prior to maturity, and the fourth, upon payment of the loan in full to mark the note and any other documents signed by the borrower "paid," and surrender any collateral. While the things above stated are required of the licensee, we do not believe the intendment and policy of the statute would be violated by their being done by some transferee other than the original lender. It seems to us that a concern licensed under the Small Loan Act might well desire itself to borrow money, and the normal method of furnishing security to a banker or other lender would be to pledge or sell as such the collateral held by such small loan company, which would necessarily be the notes given to and held by it under and in accordance with the terms of the Small Loan Act. Of course, any one acquiring from a small loan company a note given under the act in question would necessarily take that note burdened by all applicable provisions of the small loan statute. If the small loan company can in any case validly transfer to a third person, not licensed under the Small Loan Act, a note given under that act, we can see no legal or logical distinction between an isolated transaction and a regular financing custom entered into between the small loan company and a bank or other third person. Therefore, we cannot see why in the present instance the defendants should escape payment of what they have promised on the technicality that the transferee and present holder of the note given by him happens not to be licensed under the Small Loan Act.

Accordingly, the judgment of the first city court is affirmed at the cost of appellants.

Affirmed.

WESTERFIELD, J., dissents.

Court of Appeal of Louisiana. Orleans.

Dec. 2, 1935.